IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LANDS' END, INC.,

              Plaintiff,

v.

GENESYS SOFTWARE SYSTEMS, INC.,

              Defendant.

ORDER

13-cv-38-bbc

---

In mid-February, the wheels starting coming off the discovery truck, starting with Lands' End's motion to compel discovery (dkt. 39), which the court granted in a text-only order (dkt. 42) after Genesys failed to respond to it, which prompted Genesys to seek reconsideration (dkt. 43), while Lands' End filed its request for costs under Rule 37(a) (dkt. 49); then Lands' End filed an unrelated motion for a court-ordered confidentiality designation on its disclosed information (dkt. 55), followed in turn by Genesys's two motions to extend discovery and the shift discovery costs (dkts. 66 & 73).  All pending motions are contested by the responding party.  I will address the motions in the order the parties filed them:

**Dkt. 43: Genesys's Motion To Vacate**

On February 19, 2014, Lands' End filed a motion to compel full and complete responses to Lands' End's requests for production of documents (RFPs) 8 and 9, accompanied by an 8½ page brief and 12 exhibits totaling 91 pages.  *See* dkts. 39-41.  Pursuant to the procedure set forth in the March 15, 2013 preliminary pretrial conference order (dkt. 13 at 4), the court immediately set a seven-day response deadline for Genesys: "Response due 2/26/2014." Thereafter, the court set a telephonic hearing on the motion, then re-set the hearing at the request of Genesys's counsel.  Genesys did not file a response, so on March 12, 2014, the court

granted the Lands' End's motion, indicating that "the court is not going to hold a hearing on an unopposed motion. Defendant is not entitled to raise orally at a hearing objections it did not timely make in writing." *See* dkt. 42.

Within two days, on March 14, Genesys filed its motion to vacate, stating among other things that

> While Defendant acknowledges that the Local Rules generally require submission of a written response to a motion, where, as here, the Court entered an Order setting the matter down for a telephonic hearing without mention of the need for a Response; and where, as here, counsel contacted the Court to reschedule the telephone hearing which was done without any mention of the need to file a written response; and where, as here, the Court entered yet a second written Order, again without mention of the need to file a written Response, undersigned counsel (who has had numerous hearings of various types based on similar orders, without need for briefs, or with such briefs being optional), counsel respectfully submits that he was ready, willing, and able to provide a meritorious defense to Defendant's Motion, notwithstanding that counsel was actually away from his office due to the death of a close family friend.
>
> Dkt. 44 at 1-2.

The court set a response deadline (but did not request a reply); Lands' End filed a terse opposition brief (dkt. 51), which prompted Genesys to file an unbidden reply (dkt. 58).

Genesys's arguments in support of declaring a mulligan are illogical and unpersuasive. After the court set the response deadline–as the preliminary pretrial conference order stated would happen–the court never rescinded or extended this deadline. From the court's perspective, the response deadline did not need to be re-addressed because nothing happened that would have changed it. Why Genesys's attorney would surmise otherwise makes no sense, and why counsel would not check the accuracy of his incorrect surmise by calling the court is inexplicable.

That's really the end of it, but for counsel's benefit I note that this approach is not a punctilious glorification of form over substance.  Since the 1990s, this court has resolved civil lawsuit discovery disputes by requiring written motions followed seven calendar days later by a written response.  The court then determines whether to schedule a telephonic hearing promptly after a discovery motion has been briefed in order to provide a quick, oral rulings to the parties. Setting a telephonic hearing has never excused a party from responding in writing to its opponent's discovery motion and it would be illogical to surmise that it would.  This is because the court must know both sides' positions *prior* to the hearing so that the court can prepare adequately.  If a party does not provide the required written response, then the court does not hold the hearing because the motion is unopposed.  The court occasionally will cut a party some slack if an emergency prevents timely compliance, but a lawyer who decides, without checking, that he will forgo the required written response and instead will orally explain his position to the court is at the end of his rope because he has chosen to make his job easier and the court's job harder.  The ruling stands.

**Dkt. 49: Lands' End's Request for Cost-Shifting**

At the court's invitation, having prevailed by default on its first motion to compel docketed at 39, Lands' End submitted a request for attorneys' fees and costs.  Since then, all the other discovery motions addressed in this order got filed in quick sequence.  I address the net Rule 37(a)(5) effect at the end of this order.

3

**Dkt. 55: Lands' End's Motion For a Protective Order**

On March 21, 2014, Lands' End filed a motion asking the court to protect documents that Lands' End disclosed in response to Genesys's RFPs 3-6, by requiring either that they be maintained at an "Attorneys' Eyes Only" (AEO) level of confidentiality or that they not be disclosed without a showing of their relevance. The documents in question concern Lands' End's relationship with its new HR software vendor, Ceridian, a direct competitor of Genesys.[1]

After discovery began last fall, according to Lands' End, the parties attempted to agree on the contents of a protective order but failed.[2] According to Lands' End, the parties agreed to a "temporary" disclosure process (which apparently still is in place) to expedite disclosure of confidential documents. Under this agreement, says Lands' End, it turned over about 4400 pages of documents, with the subset concerning Ceridian marked AEO, and Genesys agreed to abide by this designation until the parties agreed or the court ruled otherwise.

On January 24, 2014, the court issued its order tossing out all of Genesys's counterclaims except for breach of contract; Lands' End then apparently asked Genesys how any of Lands' End's Ceridian documents could be relevant to the remaining issues. On February 12, 2014, Lands' End provided redacted "Confidential" versions of some of its Ceridian documents; on

---

[1] These four RFPs seek: (3) all documents relating to Ceridian and the implementation and installation of its software; (4) all correspondence relating to Lands' End's selection, licensing and transition to Ceridian's software from Genesys's; (5) all contingency plans relating to implementation of Ceridian's software; and (6) all documents relating to any guaranty of implementation and installation of Ceridian's software.

[2] It is not so clear that Genesys would characterize it this way, but in any event, the entry of a protective order is not a matter that the parties should have let slide in an IP lawsuit. The parties should have promptly alerted the court, which would have employed its "baseball arbitration" procedure: each side submits its proposed protective order, then the court chooses and enters without changes the one that most closely comports with the court's view of what a protective order should look like in this lawsuit. This is a quick, efficient and predictable procedure.

March 14, 2014, Genesys asked Lands' End to do this with the rest of its Ceridian documents; Lands' End declined to do so, claiming that these documents were irrelevant, although it was prepared to be persuaded otherwise on a document by document basis. In the instant motion, Lands' End essentially is asking for a court order endorsing its position on how to handle the Ceridian documents.

Not so fast, responds Genesys. Labeling this "clearly the most frivolous motion that . . . counsel has seen in over forty years of practicing law," Genesys contends that Lands' End position thwarts the court's ability to review the disputed documents *in camera* and make a decision accordingly. Dkt. 62 at 1. In the "Relevant Facts" section of its opposition, Genesys presents a time line for Genesys's October 8, 2013 RFPs, showing that Lands' End did not timely produce *any* of the requested documents and its attorneys were unresponsive to requests to confer and comply. On December 2, 2013, Lands' End produced 110 pages of documents; on December 6, 2013, Lands' End produced 3900 more documents (Bates LE-000576-004441), over 90% of which were stamped AEO, thereby preventing Genesys's employees from reviewing them. Genesys, by counsel, responded that Lands' End was obliged to reduce the level of protection to "confidential" so that Genesys's employees could look at them; Lands' End declined to do. Genesys warned that it would seek a judicial *in camera* review of all AEO documents if Lands' End did not capitulate; but Lands' End "obstinately declined to rectify the problem which it, alone, created." Dkt. 62 at 3. On March 14, 2014, Genesis announced a final deadline of March 21, 2014 for Lands' End to lower its AEO designations to confidential; instead, on March 21, Lands' End filed its motion for protection.

5

In the "Legal Argument" section of its opposition, Genesys offers two paragraphs: first, that Lands' End has not fulfilled its discovery obligations because it is almost six months after receiving Genesys's RFPs, and Lands' End "has yet to supply its documents in such form as would allow undersigned counsel to share them with his client." Dkt. 62 at 3. Apparently as part of its argument why this court should deny Lands' End's pending motion for protection, Genesys further argues that it was reluctant to file a motion to compel, "recognizing the burden to the Court that a request for an *in camera* review of almost 5,000 documents would entail." *Id.* Finally, Genesys argues that Lands' End did not consult with Genesys before filing its motion for a protective order, thus violating the court's Preliminary Pretrial Conference Order; Genesys views this as "simply another attempt to 'strong arm' Genesys." That said, Genesys reserves its right to file a motion to compel on this dispute. *Id.* at 3-4.

Genesys may be correct to suspect that Lands' End was angling for a tactical advantage by filing it motion for protection on March 21, 2014 without forewarning and without meeting Genesys's "or else!" deadline on its reclassification demand. But no advantage actually has accrued and it is hard to discern what tactical advantage Lands' End *could* have accrued, since Genesys had made clear that it was going to promptly file its own motion on this same topic. We would have been addressing this same dispute no matter what. In any event, the pretrial conference order does not say that a party must pre-warn its opponent that it is about to file a discovery-based motion; the order directs that "[a] party may not file a motion regrading discovery until that party has made a good faith attempt to resolve the dispute." Dkt. 13 at 4. Here, both sides tried to resolve the dispute and they failed, so either side could have filed a motion.

6

On a related note, Genesys has no basis to complain about how much time has passed without resolution of this dispute because Genesys chose not to file a motion to compel earlier in the process. The pretrial conference order advises that "the court also expects the parties to file discovery motions promptly if self help fails." *Id.* While no lawyer wants to risk irritating a judge by asking him to review "almost 5000" documents *in camera*, there comes a point where you have to fish or cut bait. This would have been a low risk proposition: this court will do what needs doing to keep civil discovery proceeding apace. (For what it's worth, the court would have used a sampling algorithm to review any in camera review exceeding one thousand pages. But we never got there, because Genesys chose not to file its motion.)

Which segues to Genesys's failure to respond substantively to Lands' End's motion for protection. Why is it insufficient for Lands' End to provide a subset of the critical documents under a "confidential" restriction with the "AEO" information redacted? More saliently, why is this information even still relevant under Rule 26(b) in light of the court's January 24, 2014 order (dkt. 37) granting summary judgment against Genesys's counterclaims for conversion, misappropriation of trade secrets and injunctive relief? Genesys doesn't answer either question and the court cannot discern on its own any reason why Lands' End's compromise on this issue is inadequate. Counsel can share the redacted versions of these documents with his client, if he still sees some relevance to doing so. In sum, Lands' End's motion for protection is GRANTED, and it is entitled to seek costs under Rule 37(a)(5).

Finally, I note that Genesys twice already in this case has sought reconsideration of court orders ruling against Genesys, asking to submit additional evidence and argument that Genesys hopes will change the outcome. *See* dkts. 43 (denied earlier in this order) and dkt. 69 (before

7

Judge Crabb). This court does not have the time or inclination to revisit its rulings based on the late submission of facts and arguments a party could have/should have submitted in the first instance. Hence, the court will not consider any motion by Genesys to vacate the instant decision so that Genesys can amplify the record with submissions that it should have filed within its original response deadline.

**Dkts. 66 & 73: Genesys's Motion for Sanctions and Extension of Discovery**

On March 31, 2014, Genesys moved to extend discovery beyond the April 18, 2014 cutoff and to recover all its fees and expenses with respect to its depositions of Jeffrey Grayson and Ceridian HTM, Inc.

Let's deal with Grayson's deposition first: Genesys presents a time line starting on March 28, 2013, on which Lands' End served its Rule 26(a)(1) disclosures identifying Jeffrey Grayson as its employee with knowledge of Lands' End's attempts to extend the Genesys license and then the selection and implementation of Ceridian software to replace Genesys. On April 29, 2013, Grayson submitted a declaration identifying himself as Lands' End's IT Senior Program Manager. On March 21, 2014, counsel for Genesys noticed Grayson for a deposition in Madison on April 9, along with another Lands' End employee, to be followed by the 30(b)(6) deposition on April 10. Lands' End's attorney did not at that time flag any problems with deposing Grayson. Lands' End's attorney also was aware that Genesys's attorney would be out of his office from Tuesday, April 1, through Saturday, April 5, 2014. On Friday, March 28, 2014, at 3:53 p.m., Lands' End's attorney called the office of Genesys's attorney and left a voice mail message reporting that Grayson no longer was employed at Lands' End. The two attorneys

managed to speak directly that afternoon, and Lands' End revealed for the first time that Grayson had retired on July 5, 2013, and that Genesys would have to subpoena him to a deposition.

On March 31, 2014, counsel for Genesys sent an email to Lands' End's attorney complaining about this lack of notice and demanding that Lands' End pay the expenses of a return trip to depose Grayson on a later date. Lands' End, by counsel, responded that Grayson actually had worked at Lands' End as recently as December 2013, that Genesys was equally guilty of failing to update its disclosures, Lands' End could not produce Grayson and it would not pay the requested costs.

On March 31, 2014 at 11:06 p.m., Genesys filed its discovery motion addressing the Grayson dispute. The relief Genesys requests is an order that Lands' End pay Genesys's costs incurred in returning to Wisconsin to depose Grayson, extending discovery to allow the deposition of Grayson after April 18 and its costs of filing this motion. On April 2, 2014, while Genesys's attorney was on vacation, counsel for Lands' End learned that Grayson was willing to appear to be deposed on April 8, 2014 without the need for a subpoena; counsel left a voice mail for Genesys's attorney on April 2, 2014 at 12:11 p.m., then responded to a request for an email recapitulation by sending this message at 8:19 p.m. that same day: "As I noted in another email, Grayson will voluntarily appear on Tuesday at 9:00 am. You agreed that you would withdraw your motion if he would, so please withdraw your motion. Thanks." Dkt. 78-3. There is no indication that Genesys's attorney responded to this email, but Genesys did not withdraw the instant motion, and no one reported back to the court whether Grayson actually was deposed on April 8.

So, on April 11, 2014 (the date of this order), court staff telephonically inquired of the attorneys whether Genesys had, in fact, deposed Grayson on April 8, 2014. Counsel for Lands' End returned the call to confirm that the deposition had occurred. That would seem to moot all objective aspects of the motion other than perhaps cost-shifting, if the court were to find it appropriate. Although Lands' End likely would advocate against connecting the dots in this fashion, Rule 37(a)(5)(A) does provide for cost-shifting "if the disclosure or requested discovery is provided after the motion was filed." I deal with this in the omnibus discussion of cost-shifting at the end of this order.

Next is Genesys's complaint about its recent attempt to depose Ceridian, a third party and direct competitor of Genesys. In response to Genesys's Interrogatory No. 1 asking who had replaced Genesys, Lands' End responded on November 14, 2013 that "The new vendor is Ceridian." In the documents that Lands' End produced to Genesys, the company was referred to as "Ceridian Corporation." Four months later, on March 21, 2014 Genesys prepared a Rule 45 subpoena for "Ceridian Corporation," noticing its deposition for April 7, 2014 in Minneapolis. On March 27, 2014, counsel for Lands' End called counsel for Genesys to report that Ceridian Corporation had been converted to Ceridian LLC, and that Ceridian Corporation's documents had been assigned to Ceridian HCM, Inc. On March 28, 2014, Genesys issued a new Rule 45 subpoena to Ceridian HCM, Inc., noticing its deposition for April 18, 2014.

Lands' End did not mislead or lull Genesys with regard to Ceridian's change in corporate structure. In November, 2013, Lands' End timely identified its new vendor simply as "Ceridian." Lands' End did not subsequently advise Genesys about the change to Ceridian HCM, Inc. because Lands' End did not know about the change to Ceridian HCM. I suppose

that if Lands' End actually had known about the change, then it would have been a courteous gesture to alert Genesys; but Lands' End was not obliged to monitor changes in the corporate structure of its vendor for Genesys's benefit. In any event, it appears that Genesys now has served a subpoena on Ceridian HCM and has noticed a deposition on the last day of discovery. Lands' End reports that Ceridian HCM has sent a letter to Genesys objecting to the subpoena and deposition, but that is not Lands' End's concern and at this point, it is not the court's concern either.

From the court's perspective, poor time management is the only reason that Genesys has complained to the court about its difficulties obtaining information from Ceridian. Despite having had over a year to conduct discovery (since last March 14, 2013), the parties seem to have backloaded their discovery to the point that there is no time left to smooth out these fairly routine discovery wrinkles. This isn't uncommon in civil litigation in this court, particularly when there are dispositive motions pending, but neither is it a basis for the court to intervene to make things right. The pretrial conference order is rife with admonitions to the parties to attend diligently to their obligations in this lawsuit and to meet their deadlines. *See, e.g.,* dkt. 13 at 1, 2, 3, 4 and 5-6.

This leaves Genesys' final pending discovery complaint regarding former Lands' End employee Steven Cretney. On April 4, 2014, two weeks before the end of discovery, Genesys moved for an order extending discovery and requiring Lands' End to pay its costs to depose Cretney. Dkt. 73. Genesys reports that it served its first set of interrogatories on Lands' End on October 8, 2013 (not quite seven months after discovery commenced), and learned from Lands' End's November 14, 2013 responses that Steve Cretney, the company's Vice President-

11

Chief Information Officer, had participated in the decision to replace Genesys's software with Ceridian's and that Cretney was responsible for the transition. When the transition fell behind schedule, Cretney created a "mitigation strategy" that included calculations predicting how much it would cost Lands' End to buy a license extension from Genesys. Those calculations are extremely close to the calculations performed by Lands' End's disclosed expert (David Fiacco). All of this prompted Genesys, on April 3, 2014, to notice Cretney's deposition for April 9, 2014 in Madison. At 9:58 a.m. on April 3, 2014, counsel for Lands' End emailed counsel for Genesys, stating "Mr. Cretney no longer works at Lands' End. You will have to subpoena him." Dkt. 74-5. Having never received an updated interrogatory response regarding Cretney's status, Genesys views this last-minute revelation as sandbagging and it filed its motion for relief the next day, April 4, 2014 (at 2:23 a.m.). Genesys wants this court to extend the discovery cutoff to allow Cretney's deposition and it wants Lands' End to pay its expenses for having to return to Madison to take this deposition on a later date.

   Lands' End responded (on April 7, 2014, the Monday after Genesys's Friday morning filing) that it did not and does not view Cretney as an important a witness, it had no idea that Genesys thought so, and it didn't learn until April 3, 2014 that Cretney even would be in play. Lands' End reports that in its November, 2103 interrogatory responses, it identified Cretney as one of seven people who took part in the decision to replace Genesys's software with Ceridian's software, and that three of those seven will be deposed next week. It wasn't until April 3, 2014, that Genesys identified Cretney as a deposition witness, and it was only then that Lands' End's attorneys inquired about him and learned that he was gone.

The court could argue equities in both directions. On the one hand, it would have been prudent for Lands' End's attorneys to keep track of the seven decision-makers throughout this lawsuit, just in case. On the other hand, after Lands' End identified Cretney to Genesys last November as one of the decision makers, and after Lands' End's attorneys had deposition-scheduling discussions with Genesys about some of the others but not Cretney, the court is not going to fault Lands' End for having lost track of Cretney. Again, what would have been a discovery hiccup three months ago has been magnified into perceived heartburn in the two weeks before discovery closes. Greater diligence and more careful planning by Genesys would have avoided this last minute motion. The bottom line is that Genesys is not entitled to the relief it seeks regarding Cretney's deposition.

**Cost Shifting**

Pursuant to Rule 37(a)(5)(A) & (B), the court is to shift reasonable costs in favor of the prevailing party on a discovery motion after giving both sides a chance to be heard, unless other circumstances make an award of expenses unjust. The court invited an itemization on the first-filed motion, which Lands' End won by default (and for which the court would not have granted the full amount requested). The other motions have presented a mixed bag, although Lands' End comes out on top. That said, as of today, April 11, 2014, there is one week left of discovery, with motions in limine and other submissions also due on April 18, 2014 and trial set for May 19, 2014. From the court's perspective, the cost in time and effort to the parties and their attorneys of itemizing and arguing what costs should be shifted on which discovery motions is not worth it, particularly where the net to Lands' End is unlikely to be a large number. The

circumstances presented here lead me to conclude that everyone should spend the remaining time preparing for trial. Costs will not be shifted in either direction.

ORDER

For the reasons stated above, IT IS ORDERED that:

(1) Genesys's Motion To Vacate, dkt. 43, is DENIED:

(2) Lands' End's Request for Cost-Shifting, dkt. 49, is DENIED;

(3) Lands' End's Motion For a Protective Order, dkt. 55, is GRANTED

(4) Genesys's two Motion for Sanctions and Extension of Discovery, dkts. 66 & 73, are DENIED

Entered this 11th day of April, 2014.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge